Good morning, Your Honors. May it please the Court, Paul Barr, Federal Defenders of San Diego, for Mr. David Nuno-Garza. I was certainly surprised about this previous case. Your Honors, in this case, I'm taking a slightly different position, as the Court is aware. The district court in this case lacked jurisdiction to revoke Mr. Nuno's supervised release because no valid warrant issued prior to the completion of that term. Accordingly, Mr. Nuno's term of supervised release concluded on April 8, 2005, and this Court should vacate the sentence imposed by the district court in this case. There's no dispute that the original warrant, the petition issued by the probation officer, was defective in light of this Court's holding in Vargas Amaya. But this Court in Vargas Amaya made clear that the warrant clause of the Fourth Amendment applies with equal force in the context of supervised release. And there are several requirements of the warrant clause. One is the sworn statements issue that was before this Court in Vargas Amaya. But it's also important that the petition contain facts sufficient to establish probable cause. And as I've outlined in my papers, both of those things are missing here in the original petition. The amended petition attempted to correct that first fatal flaw, which was the lack of sworn statements. But it did nothing to address the equally problematic aspect of the initial petition, which was that there weren't sufficient facts on the face of the petition to allow a district court judge to exercise his independent discretion to evaluate the adequacy of the probable cause statement in the petition. And I think that the Supreme Court's case in Girondella, which I've cited in my papers, highlights that issue quite clearly. And the facts in that case are similar to the facts in this case in certain respect. The complaint in that case provided certain facts. It provided the name of the defendant, provided a date, a time, a place. It also cited a statute that was allegedly violated by the defendant in that case. And the Supreme Court found that the warrant, the complaint was defective, the warrant was invalid, the arrest must be invalidated because there was no ‑‑ there were not sufficient facts on the record to allow the judge to evaluate the truthfulness of the information provided in the complaint. In particular, it contained no affirmative allegation that the defiant spoke with personal knowledge of those facts that were alleged in the complaint. It did not indicate any source for the complainant's belief. And there was no other sufficient basis for probable cause in that case. And what was important in Girondella was that the Court said we can't ‑‑ the errors cannot be cured by a presumption that the complaint was made based on personal knowledge. And I think the same rule applies here, absolutely. In addition, I think that the petition is missing an important fact, which is the nature of the obligations involved in the supervised release. So, for instance, the first allegation says that Mr. Nuno failed to report for ear analysis on several dates are listed. But it doesn't do anything to describe to the Court what Mr. Nuno's reporting obligations were. So we have no ‑‑ there's no way for a judge to look at these facts on their face, on the four corners of the document, and determine if, by failing to show up on those dates, he's in violation of the terms of a supervised release. So I think those are two critical flaws in the original petition. The amended petition, as I've said, does nothing to address that. It's merely a naked statement swearing to the facts that were present in the original petition. And I've also highlighted some errors, I think, with that petition, insofar as it points to a section of the original petition which is nonexistent. But the main issue is that the facts presented on the four corners of the document don't allow a judge to exercise independent discretion. And as this case discussed in Anderson, the other important reason that those facts need to be there are so that on appeal, an appellate court has a record that it can review. So it has something to look at so that it can evaluate whether the magistrate judge or district court judge exercises discretion properly in those instances. Now, the second issue, if there are no questions on that, is whether or not this tolling doctrine is applicable in this case or at all. And as I've argued in my papers, this Court should reconsider its previous cases to the extent that it has created an equitable tolling doctrine in the supervised release regime where Congress has not created such a tolling doctrine. The Supreme Court in its recent case, Bowles v. Russell, really goes into great detail outlining the significance of jurisdiction and that it is created only by Congress. The courts have no power to extend that jurisdiction without an action of Congress. And here there is no such action. And furthermore, we can infer that they're not countencing such an extension because they have created a tolling doctrine. 3624E does expressly toll supervised release if a person is serving a term of incarceration of more than 30 days. So under the canons of construction, I think it's reasonable to infer that Congress is not tacitly acknowledging or countencing such a tolling provision. This case, furthermore, the change in the intervening change in the statutory regime in this case is important as well. 3583I was enacted in 1995, three years after this Court decided Crane, which is sort of the progenitor of this line of cases. And it essentially undermines completely the concerns that this Court had when it created this tolling doctrine initially, which is that a person would get some kind of a windfall by leaving the jurisdiction, that effectively we would be incentivizing, absconding. And the labor vacation provision in 3583I completely vitiates that concern because it allows a probation officer to file a petition so long as it adheres with the requirements of the Fourth Amendment and so long as it is filed before the natural termination of the period of supervised release. And once that is done, the Court retains jurisdiction to revoke supervised release as long as is reasonably necessary. And so in the case where an individual absconds, there's really no concern because if and when that person ever returns to the jurisdiction, if a warrant has been timely filed, the Court can then exercise its jurisdiction to revoke supervised release. So if they abscond and they file a petition that meets Vargas Amaya and all of that, then that does what? That then preserves jurisdiction until he can be found again? Precisely, Your Honor. And any further violations of supervised release that occur during the time of the set time for supervised release could be violated again? It's added to the violation. That's correct, Your Honor. And I do make the distinction in my paper that, in my opinion, 3583I is not, strictly speaking, a tolling doctrine. It allows the courts to retain jurisdiction and then to revoke on any violations that occur within the natural period of supervised release. And the Court, importantly, then also has discretion to consider subsequent conduct, even if it's not technically permitted to revoke. I think that it is within the Court's discretion to consider under 3583 and 3553A the totality of the circumstances, which may involve subsequent wrongdoing by the supervisee. But the Court is not allowed to revoke for conduct that took place after the period of supervised release naturally terminated. I see my time is nearly up. I'd like to reserve the rebuttal. Good morning. May it please the Court. My name is Joseph Smith. I'm an assistant U.S. attorney in the Southern District of California, and I represent the appellate of the United States. Although in my brief I responded in the same manner, in the same order as the appellant addressed the issues, I think that the case can be resolved based on the last issue addressed by the government, which is the fugitive tolling doctrine. The fugitive tolling doctrine does toll the period of supervised release. Therefore, whether or not there is a valid warrant issued during that period in 2004 and whether the amended petition was valid in 2005 when it was filed. Since I think it's undisputed that the appellant absconded from supervision in March 25th of 2004, his period of supervised release would continue to run and continue to toll during that time period up until in April he was released from state authorities and brought back to the custody of the United States. When it comes to the fugitive tolling doctrine, it is correct that the Crane case is sort of the seminal case when this concept was recognized by this Court. It has since been affirmed on two separate occasions in the public's opinions, the Delamore case and, again, later in the Murguia case. I believe that the appellant's position is that the doctrine is no longer valid for a few reasons, most significantly because of the passing of 3583I and then Vargas and Maya addressing that. The government's response to that is 3583I is a congressional recognition of a manner in which jurisdiction can be retained once the period of supervision has expired for acts that occur during the period of supervision where there's a warrant or summons issued. It doesn't address a fugitive status. There are many instances where district courts will issue a warrant based not upon somebody absconding but upon somebody violating something and its significance being great enough to not warrant merely a summons but require that person be taken into custody and brought before the court. The fugitive tolling doctrine is totally separate. It involves people who do abscond from supervision, as the appellant clearly did in this case. So that they're no longer under supervision. They're no longer under supervision. That's correct. In the Murguia case, there actually is an analysis of Congress and there's an acknowledgment that at 421F3rd 953 that the statutory provisions regarding supervisory release do not expressly provide for tolling during fugitive status. So clearly this is not, the Murguia court did not ignore the fact that Congress hadn't addressed this issue and addressed other issues. It was addressed in Murguia and the fugitive tolling doctrine was once again reaffirmed. There was some pointing to the Contreras case. I know there was an en banc opinion just recently this week on the Contreras case, which took out a great majority of the language which discussed panels overruling prior panel precedent. The Contreras case is extremely highly distinguishable, even though it may look on the surface to be factually consistent. In Contreras, the issue was the application note to the guidelines regarding abusive position of trust. There was an application note at the time of the Hill case, which is the case that addressed that. After that, there was a subsequent change in that exact same application note that wasn't analyzed by future panels. This case, the Crane case, there was nothing in place statutorily that the Crane case evaluated. Subsequent to Crane coming out and becoming good law, 3583I was passed. The government's position is that is not a statute on fugitive tolling. It does not affect the fugitive tolling doctrine. Therefore, as recognized by Murguía-Olivares and also by de la Mora, Crane continues to be good law. Well, the fundamental position being argued, as I understood it, was that the whole purpose of tolling was to permit the government to get at the conduct that occurred during the period and that once the statute was passed, then there's no purpose for it anymore. Your argument is that the purpose of tolling is really independent of that. Yes, Your Honor. And the purpose of tolling, as articulated in Crane and de la Mora and also Murguía, is in large part to prevent an individual from absconding and avoiding the responsibility of supervision. Avoiding the supervision. The court has an affirmative duty to supervise. Certainly that's congressionally recognized. An individual can't, through his own actions, abscond and then get the benefit of that. And I know that's an additional issue with this particular appeal. And from the prior argument, I understand, although I don't agree, that people can take different positions on it. Our position is consistent. I take it your office does not agree with the position of the central district that it lifts the bar? That's correct, Your Honor. Because there is this continuing duty, and there is a difference between 3583I, which talks about holding people accountable for conduct which occurs after the termination of the supervised release for warrants that were issued during the term of the supervised release. Your tolling doctrine is independent of that and talks about holding people accountable for their conduct while on supervised release. In Mergia, specifically at 421F3rd 955, there's a discussion saying, by virtue of tolling, the term of supervised release has not expired at the time of the arrest for subsequent crimes. Therefore, he's still under that period of supervision. The court still has an affirmative duty to supervise that individual, and therefore they can't abscond, successfully hide until it would have run. So I guess I take it that if there's conduct that would have, that if he's in prison during the term of the release, supervised, if he winds up in prison and he commits certain offenses there, that they wouldn't count as violations of the supervised release because he's not under supervised. He's not being... He's supervised. I was going to say he's being supervised, but not under supervised release. That's great. And obviously that particular issue isn't present in this case because a subsequent Second Amendment petition involves the conduct which resulted in his state imprisonment. However, that is told under a different statute, but it is still told. And when something is told, it doesn't go away. It means it doesn't terminate. And the government's position is that, I mean... I suppose you could violate him for any crimes he commits in prison, but... That would be, I mean, not having analyzed it in detail, that would be my initial reaction would be that... Kind of pointless. They go to his criminal history when he goes back before the second revocation. That's correct, Your Honor. And so the government feels that the fugitive... Want an advisory opinion on any of this? If the court's inclined to do so and is inclined to rule in the government's favor. Y'all are pretty good because in Idaho they would be violating him for every dang one of those crimes. Maybe in the Southern District as well. And so the government's position on the fugitive tolling doctrine is that it continues to apply with just as much force as it did in 1993 when the claim was decided, the passing of 3583I. What's wrong with counsel's rationale? I mean, all of this stuff we're going back and forth on, counsel for the defendant makes a good point under 3583I. The way now to keep the person under control is that he absconds, you violate him for that, and then if you can ever get him back, you can pick up all the other crimes that he commits during the period of time he was supposed to have been under supervised release and self-selected out of supervision. And the government's response to that, Your Honor, would be that 3583I doesn't directly address the fugitive tolling doctrine. It addresses the underlying problem, though. You say, well, it doesn't disincentivize, but I'm not sure why not. If somebody's absconding and you're aware of the absconding, you can stop them in the tracks as far as getting out from under the supervised release term as originally conceived and retain jurisdiction in the district court by, you know, filing a proper reward as a minor warrant. And my response, Your Honor, would be that there are certain circumstances where 3583 wouldn't cover all those situations because 3583I addresses a warrant being issued before the termination. If that covered the fugitive tolling doctrine, and even in this case, if he violated in March of 2004 or March of 2005, had he, and the warrant wasn't issued, the petition wasn't presented by a probation officer until May of that year. It wasn't signed off by the judge until a few days after that. There could be situations if we just applied 3583I and not the fugitive tolling doctrine, someone could leave toward the end of their expiration. The probation officer would be stuck in the unfortunate position of trying to maybe cut the person at a break or maybe trying to see if it was a conscious decision and then have to try to get a petition filed as soon as possible to toll it or to at least allow for the conduct to be considered. So where the fugitive tolling doctrine is all about holding people accountable when they, through their own voluntary actions, abscond. They don't just violate, but they actually abscond. They're escaping the period of supervised release, so they've still got to serve it. That's correct. And that's what I meant by self-selecting. Yeah. If there are no other questions, I'll stop. Thank you. Thank you. Just briefly, Your Honors. I think there is a concern definitely in the cases that a person is escaping supervised release by fleeing. And that's not the case because, as here, when a person is violated, if a properly filed warrant is filed, a person absconds while a person is absconding and he's brought back within the jurisdiction of the courts, he will be put back on supervised release. So even though he hasn't technically been under supervision for that period of time, he's going to have a period of supervised release imposed once again, most likely, as happened here where Mr. Nunez received 24 additional months of supervised release. I think to return to a point made by Judge Fisher, claim says that to hold otherwise, in other words, to not adopt the fugitive tolling doctrine, would reward those who flee from bench warrants and maintain their fugitive status. And that is the concern that's absolutely driving this doctrine. And I think that it has been undermined by 3583I. And I think, furthermore, that simply put, the Court lacked the authority to even have that, even if it were good policy, that it's the purview of Congress to establish the cases that can properly be considered by Federal courts. And whether or not individual courts or individual judges may agree or disagree, it's Congress who has the final say on that matter. Well, but the honest truth is Congress does have the say if they address the matter. I guess what I'm worried about is does really this new statute address the matters that are affected by this case? I think that, as I said, Your Honor, because Congress has affirmatively passed a particular tolling doctrine, that's the one for a person serving a period of incarceration, 3624E, but that addresses, that's clear that Congress knows how and when to. It wasn't true when Crane was decided. Yeah. That was, yeah. It wasn't. That was, yeah. And I think that. Unless there's intervening law, we can't do something. Well, I think, Your Honor, that there is intervening law. The Supreme Court cases that I cited. And I think, finally, that this Court has never squarely been presented with the question of whether or not it has the authority to create this equitable tolling doctrine. And I think Bowles v. Russell is very clear that it does not. Okay.  All right.  Thank you. Thank you both. The Court appreciates the arguments. The case just argued is submitted. That concludes the Court's calendar for this morning, and the Court stands adjourned. All rise. This Court for this session stands adjourned.
judges: Schroeder, Fisher, Smith N. R.